No. C-1335

**Prentice Joe Reliford v. The People of the State of Colorado**

(579 P.2d 1145)

Decided June 12, 1978.                    Rehearing denied July 3, 1978.

Miller and Gray, P.C., William R. Gray, for petitioner.

J. D. MacFarlane, Attorney General, David W. Robbins, Deputy, Edward G. Donovan, Solicitor General, Robert C. Lehnert, Assistant, for respondent.

*En Banc.*

MR. JUSTICE CARRIGAN delivered the opinion of the Court.

The petitioner, Prentice Joe Reliford, was convicted by a jury of second-degree murder,[1] and the court of appeals affirmed.[2] We granted certiorari and now affirm the judgment of the court of appeals.

On June 28, 1972, the petitioner was charged by indictment with the second-degree murder of his wife. After the public defender was appointed to represent him, the petitioner pleaded not guilty and various pretrial hearings, including a suppression hearing, were held. Trial was scheduled to begin May 1, 1973.

On May 2, 1973, however, before commencement of trial, the indictment was dismissed on the People's motion. Immediately thereafter, the People filed an information charging the petitioner with first-degree murder.[3] Subsequently, the trial court granted the petitioner's motion to dismiss for denial of a speedy trial, but that dismissal was reversed by this court and the cause was remanded for further proceedings. *People v. Reliford,* 186 Colo. 6, 525 P.2d 467 (1974).

Following the remand it was determined that the petitioner no longer qualified for representation by the public defender because he was then earning over $1,500 per month. At the petitioner's request, time was granted for him to employ an attorney. After two appearances at which the petitioner stated that he had not retained an attorney, the trial court assigned the public defender to serve in an advisory role and set trial to begin December 3, 1974.

---

[1] C.R.S 1963, 40-3-103 (now section 18-3-103, C.R.S. 1973).
[2] *People v. Reliford,* 39 Colo. App. 474, 568 P.2d 496 (1977).
[3] C.R.S. 1963, 40-3-102 (now section 18-3-102, C.R.S. 1973).

On November 4, 1974, the public defender requested a hearing to clarify the role he was expected to fulfill at the trial. On November 29, the trial court reappointed the public defender to represent the petitioner and ordered the petitioner to pay fifty dollars per week into court for that representation. Trial was then rescheduled to commence February 18, 1975.

In a written motion filed December 4, 1974, however, the petitioner requested that the public defender withdraw and stated that he wished to represent himself. Two hearings were held in February, 1975, regarding the petitioner's decision to appear *pro se* and the procedures to be followed at trial. The petitioner continued to insist on representing himself, and he did so at the trial, which took place February 18-21, 1975. The jury convicted him of second-degree murder, and he was sentenced to a ten to fifteen-year term in the penitentiary. On appeal to the court of appeals and on petition to this court, the petitioner has been represented by privately retained counsel.

### I. *The Decision to Appear Pro Se*

The petitioner first contends that the trial court did not adequately advise him regarding his decision to represent himself, and that the court further erred in failing to appoint "advisory" counsel for him. We do not agree.

In the absence of exceptional circumstances, a person accused of crime in Colorado has a right guaranteed by the state constitution to represent himself. *Colo. Const.,* Art. II, sec. 16;[4] *Martinez v. People,* 172 Colo. 82, 470 P.2d 26 (1970). Moreover, the Sixth Amendment to the United States Constitution also protects a defendant's right to appear *pro se. Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).

Both *Martinez, supra,* and *Faretta, supra,* emphasized that a trial court's ability to force counsel upon an unwilling defendant is limited. In establishing a guideline, the *Faretta* opinion stated:

"Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" 422 U.S. at 836, 95 S.Ct. at 2541, 45 L.Ed.2d at 581-82.[5] The standard thus established is markedly

---

[4] "In criminal prosecutions the accused shall have the right to appear and defend in person and by counsel . . . ." *Colo. Const.,* Art. II, sec. 16.

[5] This test corresponds with and is substantially identical to the one established for waiver of the right to counsel, *i.e.,* that the right must be relinquished "knowingly and intelligently." *Faretta v. California, supra,* 422 U.S. at 836, 95 S.Ct. at 2541, 45 L.Ed.2d at 581; *Johnson v. Zerbst,* 304 U.S. 458, 464-65, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461, 1466-67 (1937). Obviously, since the two rights are antithetical, the decision to assert one necessarily involves a decision to forego the other. Therefore the same basic standard applies to determine the validity of either decision.

similar to that recognized by this court when we ruled in *Martinez* that "a defendant will be permitted to proceed without counsel only if *he has an intelligent understanding* of the consequences of so doing." 172 Colo. at 85, 470 P.2d at 28.

Therefore, the question here presented is whether the trial court adequately fulfilled its duty to ascertain that the petitioner had intelligently decided to represent himself with knowledge of the duties to be imposed upon him and the disadvantages of carrying those burdens himself rather than retaining an attorney. On the facts of this particular case, we hold that the trial court met that duty.

The petitioner's desire to appear *pro se* was first presented to the court in a written notice, in which he stated that he wished to represent himself and would not accept the assistance of the public defender even in an "advisory" capacity. Thereafter, the trial judge held a hearing at which he asked the petitioner whether he still desired to represent himself and still refused even advisory counsel. When the petitioner responded affirmatively, the public defender was allowed to withdraw.

The judge then outlined for the petitioner the procedures to be followed at trial, including the impanelling of the jury, opening statement, closing summation, the examination and cross-examination of witnesses, the form and content of objection, and the procedure for requesting jury instructions. The judge specifically warned that he could not act as an advocate on behalf of the petitioner, and that the petitioner would be "essentially held to the same rules every lawyer is held to."

As the court of appeals stated:

"This detailed and extended discussion given by the trial court of the multi-faceted and burdensome obligations facing an attorney in a murder trial operated as a forceful warning to defendant of the 'danger and disadvantages' lying in his path if he appeared *pro se.*" *People v. Reliford, supra,* 39 Colo. App. at 477, 568 P.2d at 498.

Therefore, the petitioner was able "knowingly and intelligently" to make the decision to represent himself.

We are not persuaded by the contention that these warnings by the trial court were insufficient because not given until *after* the public defender had been allowed to withdraw. Although it would probably have been preferable for the trial court to have given this advice prior to approving the public defender's withdrawal, any shortcoming in that respect was cured by the court's repeated questions, in subsequent hearings, whether the petitioner still desired to proceed without counsel. Thus, after having opportunities to become more aware of the complexities of the task before him, the petitioner was repeatedly offered the opportunity to

change his mind, yet he declined. In short, here, as in *Faretta, supra,* the record indicates that a literate, competent, and understanding defendant was exercising his informed free will. Given these facts, we cannot say that the decision to appear *pro se* was not made knowingly and intelligently.

■ Finally, on this point, the petitioner argues that the trial court on its own motion should have appointed standby, advisory counsel to be available to the petitioner during trial in the event an occasion requiring assistance should arise. In support of this contention the petitioner relies primarily on the *American Bar Association Standards Relating to the Function of the Trial Judge* §6.7:

"Standby counsel for defendant representing himself.

"When a defendant has been permitted to proceed without the assistance of counsel, the trial ·judge should consider the appointment of standby counsel to assist the defendant when called upon and to call the judge's attention to matters favorable to the accused upon which the judge should rule on his own motion. Standby counsel should always be appointed in cases expected to be long or complicated or in which there are multiple defendants."

While we agree that the appointment of advisory counsel is generally a fair and commendable practice, we must also emphasize that even the persuasive authority upon which the petitioner relies does not mandate the appointment of standby counsel in cases like this one, but rather leaves the decision to the trial judge's sound discretion. Similarly, most courts have held that the appointment of advisory counsel is an intermediate measure designed to ensure a fair trial when the trial court determines that the defendant, because of mental or physical problems, is incapable of representing himself, or when it becomes apparent during trial that the defendant is simply unable to handle the task he has undertaken. *See generally J. Cook, Constitutional Rights of the Accused: Trial Rights* §37, n. 63 (1974).

In this case, nothing in the record persuades us that the trial court abused its discretion in failing to require the petitioner to accept advisory counsel. To the contrary, as previously noted, the petitioner appeared at all times to understand the proceedings and the role he had chosen, and he articulately presented a well-organized case. The petitioner relied primarily on a relatively simple alibi defense, and the trial presented no issues so complex that the trial court was required to force him to accept a lawyer's assistance in dealing with them effectively.

■ Moreover, the petitioner's adamant refusal of advisory counsel when offered before trial was adhered to throughtout the trial in spite of his continuing opportunity to request professional assistance. One cannot be allowed to insist on his constitutional right to defend himself and then, having been convicted through exercising that right, insist on a second trial because of the court's failure to deny his constitutional right to

represent himself. Defendants who demand the right to represent themselves must accept the concomitant responsibility for the results of the representation they provide. Under the circumstances here presented, we perceive no error in the trial court's decision to let the petitioner proceed through the trial exercising his right of self-representation

## II. *Evidence of Decedent's Prior Injuries*

The petitioner next contends that the trial court erred in admitting evidence of injuries previously incurred by the decedent because the injuries were never causally linked to the petitioner. Although it is true that the connection to the petitioner was slight, at best, we agree with the court of appeals' holding[6] that any error which might have occurred was not prejudicial.

Facts or circumstances relating to prior ill-feeling, mistreatment, violence, threats, or similar conduct by the defendant toward the victim are admissible to show *motive* and *malice* in homicide cases. *Romero v. People,* 170 Colo. 234, 460 P.2d 784 (1969). The trial court, after giving a cautionary instruction as required by *Stull v. People,* 140 Colo. 278, 374 P.2d 455 (1959), properly allowed testimony from several witnesses regarding prior assaults and threats by the petitioner against his wife.

In addition and as further evidence of motive or malice, the People called two doctors, a hospital administrator, and the decedent's mother to testify to injuries sustained by the decedent. The People were unable to establish, as to most of the injuries, that the petitioner had inflicted them or that they were linked to specific assaults by him established through other testimony. Nonetheless, since these occurrences were merely cumulative to the substantial evidence of malice that had already been properly admitted, we hold that there was no reversible error.

## III. *Introduction of Suppressed Evidence*

The petitioner next argues that the trial court erred when it admitted into evidence a key case which the court had suppressed prior to dismissing the original grand jury indictment. The prosecutor at trial had not been involved in the case at the time of the suppression hearing, and tendered the item inadvertently. Moreover, the keys were withdrawn from evidence as soon as the court pointed out the prosecutor's oversight.

Technically, even temporary admission of the key case was error, since by definition suppressed items cannot be admitted into evidence at trial. In this case, however, there is no indication of any prejudice resulting from the error. From the time the keys were initially admitted to the time the court discovered and corrected the error, no mention was made of their evidentiary significance. Although they were technically "in evidence" for some time, they were not given to the jury nor linked in any way to the

---

[6] *People v. Reliford, supra,* 39 Colo. App. at 478, 568 P.2d at 499.

petitioner. The trial court acted promptly when the district attorney first sought to elicit testimony regarding the keys, and prohibited their further use. Of course the purpose of the prophylactic rules requiring careful screening of evidence to be placed before the jury, is to prevent infecting the jurors' attitudes with non-admissible evidence. Nevertheless our adversary jury trial system can be no more perfect that the human beings who give it life and action. To err is human and therefore not every good faith error so taints a trial as to require reversal. While our constant ideal is perfect justice, our legal standard is whether a defendant has received a *fair* trial, for seldom, if ever, is it possible to achieve perfection in any human institution. Therefore no defendant has a right to a *perfect* trial; all have a right to a *fair* trial. In our view the human error in temporarily admitting the keys into evidence did not deny a fair trial.

### IV. *Speedy Trial*

The petitioner also contends that he was denied his right to a speedy trial, as provided by Crim. P. 48(b) and by *Colo. Const.,* Art. II, sec. 16. We do not agree.

First, Crim. P. 48(b)(5) provides as follows:

"To be entitled to a dismissal under subsection (b)(1) of this Rule, the defendant must move for dismissal prior to the commencement of his trial or the entry of a plea of guilty to the charge or an included offense. Failure so to move is a waiver of the defendant's rights under this section."

Since the petitioner did not raise this contention prior to trial, he has waived the rights provided by Rule 48(b).

Second, regarding the constitutional claims, the petitioner concedes in his brief that he raises no issues here which were not addressed in his previous appeal to his court. *People v. Reliford,* 186 Colo. 6, 525 P.2d 467 (1974). Therefore further discussion of these claims is unnecessary.

### V. *Jury Instructions*

Finally, the petitioner contends that the trial court's instructions to the jury were insufficient. Although he failed to object to the instructions at trial, the petitioner urges that we reverse because there was "plain error affecting substantial rights." *People v. Archuleta,* 180 Colo. 156, 503 P.2d 346 (1972).

In accordance with our well-established practice, we have considered the jury instructions as a whole and have determined that, when considered together, they adequately informed the jury of the law. Therefore there was no reversible error. *People v. Manier,* 184 Colo. 44, 518 P.2d 811 (1974).

Accordingly, the judgment of the court of appeals is affirmed.