The **PEOPLE** of the State of Colorado, Plaintiff–Appellee,

v.

Douglas Tyler **WOODS**, a/k/a Douglas Theodore Waldman, Defendant– Appellant.

No. 95CA1011.

Colorado Court of Appeals, Div. I.

Nov. 7, 1996.

Rehearing Denied Dec. 19, 1996.

Gale A. Norton, Attorney General, Stephen K. Erkenbrack, Chief Deputy Attorney General, Timothy M. Tymkovich, Solicitor General, Peter J. Cannici, Assistant Attorney General, Denver, for Plaintiff–Appellee.

Cleaver and Cleaver, Thoburn G. Cleaver, Boulder, for Defendant–Appellant.

Opinion by Judge ROY.

Defendant, Douglas Tyler Woods, appeals the judgment entered on a jury verdict finding him guilty of second degree burglary and third degree assault. We affirm.

Defendant was arrested for assaulting his girl friend on April 19, 1994, and for allegedly burglarizing her apartment on April 26, 1994. A public defender was appointed to represent defendant and trial was set for November 14, 1994. In the interim, the public defender filed a motion to withdraw, stating defendant intended to proceed *pro se.*

The trial court conducted a pre-trial hearing on the public defender's motion at which it advised defendant of his right to appointed counsel. The court fully advised defendant of his right to a speedy and public trial and of his rights to remain silent or testify, present evidence, cross-examine and subpoena witnesses, and to have counsel at sentencing. The court advised defendant of the charges against him and the range of penalties they carried. Defendant replied as to each that he understood and explained that he had dismissed the public defender because he had a strong desire to represent himself.

On three separate occasions during the hearing, the court asked defendant if he was certain he wished to proceed *pro se*. Each time, defendant replied in the affirmative. The court then explained it would not "bend the rules" for defendant, neither would it prejudice him because he was *pro se*. The court warned defendant that he would be better off with an attorney in terms of persuading a jury, to which defendant replied, "I fully have thought this out. I believe my best option is to defend *pro se*."

Before concluding that defendant had knowingly and intelligently waived his right to counsel, the court asked defendant about his past mental health history. Defendant replied that he had undergone counseling six years previously, but that "the problem was behind" him.

The court next addressed the prosecution's suggestion that defendant had a prior felony conviction. The court explained to defendant that if the conviction is in any way similar to the present charges, it could be "disastrous" to his case. The court also advised defendant there were some circumstances in which the information could get to the jury, even if the charge had been reduced to a misdemeanor.

The court offered to appoint advisory counsel, but defendant declined because it meant postponing trial, and he was anxious to proceed. Nevertheless, over defendant's objections, the court continued trial to December 12, 1994, and appointed advisory counsel.

At trial, before voir dire, the court explained to defendant the limited way in which advisory counsel could assist him. The court then granted defendant's motion in limine requesting the prosecution not discuss his prior conviction or his "mental capacity," apparently referring to his prior mental health counseling.

During voir dire, opening statements, and examination of witnesses, defendant digressed, was repetitive, or went beyond the scope of relevant matters. On several occasions the court interrupted defendant to explain why certain evidence was not admissible, or why he could not ask certain questions. On other occasions the court asked defendant what evidence he wanted to submit, then explained how permissibly to ask the question of a witness or introduce the particular evidence.

It is evident from the record that defendant became increasingly frustrated by his inability to present his case. At the end of the first day of trial, defendant stated, "I have learned a great deal about court and things I can or cannot submit into evidence. I really—this relationship from the view of the court I'm sure is coming out to be very different from the way it really was or the way I would like to go."

By noon on the second day, the prosecution had rested its case and defendant had called and examined six witnesses. In the early afternoon of the second day, defendant requested and was denied an attorney because of the late stage of the proceedings.

The jury returned a verdict finding defendant guilty of second degree burglary and third degree assault. The trial court then appointed advisory counsel as counsel for the defendant in subsequent proceedings.

Defendant filed motions for a new trial, one of which placed defendant's mental capacity into question. The court suspended the proceedings pending mental health evaluations. Two such evaluations concluded that defendant was competent to stand trial, and the trial court made that finding. The court granted defendant's motion for a new trial on the assault charge, in order to allow him to assert the defense of self-defense which the

trial court had precluded in the trial. The court then sentenced defendant to a five-year prison term on the burglary charge.

### I.

Defendant makes several arguments regarding the validity of his waiver of counsel and his competency to represent himself at trial. We affirm the trial court's finding that defendant was competent to make a knowing, intelligent, and voluntary waiver of his right to counsel.

The right to counsel is a fundamental right guaranteed by the Sixth Amendment, and is essential to a fair trial. *People v. Arguello,* 772 P.2d 87 (Colo.1989). The corollary right of self-representation is recognized in the Colorado Constitution, by the United States Supreme Court, and by our supreme court in *Arguello.* Colo. Const. art. II, § 16; *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).

A defendant's right of self-representation is conditioned only upon the valid waiver of the right to counsel. A trial court has a duty to conduct a specific inquiry on the record to ensure that the defendant is knowingly, intelligently, and voluntarily waiving the right to counsel. The trial court must, in addition, provide defendant with sufficient information about the dangers and disadvantages of self-representation so that the record will establish that he knows what he is doing and his choice is made with eyes open. *People v. Arguello, supra.*

Here, the trial court made an adequate inquiry, provided defendant with all of the necessary information, and appropriately admonished him. Therefore, absent more, the record supports a finding that defendant knowingly, intelligently, and voluntarily waived counsel and chose to proceed *pro se.*

### A.

Defendant first argues that his waiver was not valid because he was not represented by counsel at the time he made the waiver. We disagree.

In *Reliford v. People,* 195 Colo. 549, 553, 579 P.2d 1145, 1148 (1978), the trial court warned defendant of the dangers of proceeding *pro se* only after the public defender had been allowed to withdraw. Upon review, our supreme court observed:

> Although it would probably have been preferable for the trial court to have given this advice prior to approving the public defender's withdrawal, any shortcoming in that respect was cured by the court's repeated questions, in subsequent hearings, whether the petitioner still desired to proceed without counsel.

In this instance, the trial court repeatedly asked defendant if he was certain about waiving his right to counsel. Despite a thorough advisement and admonishment, defendant was adamant in insisting on his right of self-representation. We find the trial court committed no error by advising and admonishing defendant of his right to counsel and his right to represent himself without the benefit of counsel.

### B.

Defendant next argues, in essence, that he was incompetent to waive counsel and that, therefore, his waiver was not knowing, intelligent, and voluntary. More specifically, defendant argues that the court should have conducted an inquiry into his competence at the time he waived assistance of counsel. We disagree.

### 1.

Defendant first argues that the trial court should have ordered a mental health evaluation prior to trial to determine his competency to waive counsel.

If a trial court has reason to believe a defendant is incompetent, it has a duty to suspend the proceedings and determine defendant's competency. Section 16–8–110(2)(a), C.R.S. (1986 Repl.Vol. 8A); *see also People v. Morino,* 743 P.2d 49 (Colo. App.1987).

At the hearing on the public defender's motion to withdraw the prosecutor indicated to the court that defendant "may have had mental health problems in the past." This statement was made in conjunction with the prosecutor's recommendation that the

court appoint advisory counsel. The prosecutor indicated that the treatment may have related to a prior criminal proceeding involving a domestic dispute with defendant's former spouse. Defendant stated the counseling had occurred over six years ago and had concluded at that time.

The discussion of the defendant's mental health at this juncture was very brief and dealt with counseling and treatment in conjunction with a prior criminal proceeding over six years earlier. There is no indication in this record that defendant suffered from any mental health problems or infirmities at the time of the pre-trial hearing.

The trial court was in the best position to observe the defendant's demeanor in the courtroom and evaluate the credibility of his responses. The fact that a defendant has had counseling or treatment in the past, without more, is not sufficient to trigger an inquiry into a defendant's competency to stand trial.

We therefore conclude that the trial court fulfilled its duty to inquire about defendant's mental health and did not abuse of discretion in proceeding without further competency evaluation.

### 2.

Defendant's second argument is that the mental health evaluations conducted after the trial, and after advisory counsel had been appointed defense counsel, indicated he was incompetent to waive counsel.

■ A defendant is competent to stand trial if he is capable of understanding the nature of the proceedings against him and is able to participate or assist in his defense. *Blehm v. People,* 817 P.2d 988 (Colo.1991); § 16–8–102(3), C.R.S. (1986 Repl.Vol. 8A).

In *People v. Arguello, supra,* our supreme court, relying in part on *United States v. McDowell,* 814 F.2d 245 (6th Cir.1987), held that the degree of competency required to waive counsel is "vaguely higher" than the competency required to stand trial. *Arguello* does not contain guidance as to the meaning of "vaguely higher."

Subsequently, the United States Supreme Court, in *Godinez v. Moran,* 509 U.S. 389, 113 S.Ct. 2680, 125 L.Ed.2d 321 (1993), held that the competence necessary to waive counsel is the same as that necessary to stand trial. The court explained that the competency standard, that defendant have a "rational understanding" of the proceedings against him set forth in *Dusky v. United States,* 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960), is also sufficient for waiver of counsel. The court also indicated that, while states are free to adopt their own and more stringent competency standards for the waiver of counsel, the *Dusky* formulation is all that is required to satisfy the Due Process Clause.

■ Our supreme court has not considered this issue since the Supreme Court's pronouncement in *Godinez,* and in *Arguello* relied upon the formulation contained in *McDowell,* which the Supreme Court considered and rejected in *Godinez.* There is every indication in *Arguello* that our supreme court relied primarily on federal authority construing the Sixth Amendment in its discussion of the waiver of counsel issues. There is no indication that the court intended to set a standard for Colorado higher than that required to meet the Sixth Amendment. Therefore, we conclude that *Godinez* is the correct standard for the level of competency necessary for defendant to waive counsel.

■ Of the two post-trial evaluations conducted, only the second one directly addressed the competency question. In the second opinion, the forensic psychiatrist opined that the defendant was not suffering from any mental disease or defect which rendered him incapable of understanding the nature and course of the proceedings against him, or of participating or assisting in his defense, or cooperating with his defense counsel.

The first evaluation, which was conducted by a clinician of defendant's choosing, concluded that defendant, while able to assist in his defense, did not possess the mental capacity to represent himself adequately in a trial proceeding. The limitation appeared to be related to defendant's ability to process complex or abstract verbal information and

related more to his ability to function competently as counsel, not his competency to waive counsel.

On appeal, a reviewing court should consider the totality of the circumstances in assessing the validity of waiver of counsel. *People v. Arguello, supra.* The record supports the trial court's finding that defendant, at all times, was competent to stand trial and participate actively in his own defense and was competent to make a knowing, intelligent, and voluntary waiver of counsel, and that he did so.

We appreciate that the evaluations were performed after trial and not at the time defendant waived counsel and decided to represent himself. The infirmities upon which defendant relies, however, were caused by a brain injury that occurred in 1992, and defendant did not represent to the trial court, and has not represented to us on appeal, that his condition changed in the interim.

Therefore, we perceive no error in the trial court's denial of defendant's motion for a new trial on these bases.

### C.

Defendant's final argument on the right to counsel is that when he requested counsel, three-quarters of the way through trial, the court was obligated to provide one. We disagree.

After a defendant has knowingly, intelligently, and voluntarily waived counsel, he cannot then "whipsaw the court between his constitutional right of self-representation and his own ineffectiveness at trial." *People v. Lucero,* 200 Colo. 335, 340, 615 P.2d 660, 663 (1980).

■ A trial court is not precluded from appointing counsel at any stage of the proceedings if a *pro se* defendant is so grossly inept as to deny himself meaningful representation. However, the trial court has no duty to do so merely because the defendant has become dissatisfied with his performance. *People v. Romero,* 694 P.2d 1256 (Colo.1985).

"Defendants who demand the right to represent themselves must accept the concomitant responsibility for the results of the representation they provide." *Reliford v. People, supra,* 195 Colo. at 555, 579 P.2d at 1149. It is within the trial court's discretion to evaluate the circumstances surrounding a defendant's request to withdraw valid waiver of counsel. *People v. Price,* 903 P.2d 1190 (Colo.App.1995).

■ Here, defendant requested an attorney very near the end of trial. Having observed defendant's performance, the trial court concluded, with record support, that defendant, with the aid of his advisory counsel, was adequately represented. It would appear from the record that defendant asked for an attorney solely out of frustration with the way in which he saw his case proceeding. Therefore, the trial court did not have a duty to appoint counsel at that time, and we find that it did not abuse its discretion in failing to do so.

### II.

Defendant next argues that because the trial court granted a new trial on the assault charge, it also should have granted him a new trial on the burglary charge as the two were inextricably intertwined. We disagree.

■ While defendant's former girl friend was the victim of both offenses, and while there was an ongoing dispute between the parties, the offenses occurred a week apart. Therefore, the offenses did not share elements, were not committed in one transaction, nor did the defense to one require an admission to the other or negate a defense to the other. Defendant did not move to sever the trials.

The only basis the defendant asserts for the offenses being "inextricably intertwined" is that he elected not to testify as to the assault because of his concern about being cross-examined about a previous assault conviction. The election also prevented him from testifying as to any defenses he might have had to the burglary.

Defendant was advised of his right to testify pursuant to *People v. Curtis,* 681 P.2d 504 (Colo.1984). The trial court made a finding that the defendant's election not to testify

was a knowing, voluntary, and intelligent election. Defendant does not challenge the adequacy of the advisement or the trial court's findings.

During a discussion with the trial court concerning his right to testify, defendant was advised that the prior misdemeanor assault conviction could be raised by the prosecution. Following this discussion, defendant elected not to testify. This discussion was separate and apart from a discussion in which the court told defendant he could not, mid-trial, assert the defense of self-defense to the assault charge.

Defendant insists on appeal that the sole reason he did not testify was because of the court's ruling on self-defense. The record does not support that assertion. We also fail to understand how this set of circumstances in any way mandates a new trial on the burglary charge. The new trial was granted because the trial court did not permit defendant to assert an affirmative defense to third degree assault, a defense which does not pertain to second degree burglary.

Therefore, although we might have in the first instance ruled differently than the trial court, we cannot say that it abused its discretion in granting a new trial on the assault charge and denying it on the burglary charge.

## III.

Next, defendant argues that the trial court erred in excluding testimony regarding the reasons the victim was terminated from her employment. We disagree.

At trial, the victim's employer testified for the prosecution. On cross-examination, defendant inquired about the reasons for the victim's termination. When the witness replied that such information was confidential, the court asked the witness to disclose the information at the sidebar so the court could make an informed ruling on the issue.

The witness disclosed that the victim's employment was terminated because of her repeated discussions with customers about her situation with defendant, after being told not to do so. The court ruled, "It's not a re-sponse that will advance the inquiry in this case."

Defendant argues that because the information impeaches the credibility of the victim's claim that her delay in reporting the assault resulted from her embarrassment about the incident, the trial court abused its discretion in excluding it.

Pursuant to CRE 403, a trial court has the discretion to exclude relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issue, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. It is within the trial court's discretion to exclude evidence if, after considering the nature of the case and other evidence admitted at trial, it concludes the probative value is outweighed by the prejudicial impact. *People v. Rubanowitz,* 688 P.2d 231 (Colo. 1984). A trial court is within its discretion if it excludes evidence offered solely for impeachment purposes that will introduce collateral issues into the trial. *Williamsen v. People,* 735 P.2d 176 (Colo.1987).

Here, the impeachment value of the victim's lack of embarrassment about talking about her problems in her relationship with defendant was outweighed by the prejudicial impact of sidetracking the jury on the reason for the termination of the victim's employment.

The trial court acted within its discretion in excluding evidence of the reason for the termination of the victim's employment pursuant to CRE 403. We perceive no error in this regard.

## IV.

Defendant next argues that the trial court was not impartial and that its partiality undermined the fundamental fairness of the trial. We disagree.

At the outset, we note:

By electing to represent himself the defendant subjected himself to the same rules, procedures, and substantive law applicable to a licensed attorney. A pro se defendant cannot legitimately expect the court to de-

viate from its role of impartial arbiter and accord preferential treatment to a litigant simply because of the exercise of the constitutional right of self-representation.

*People v. Romero, supra,* 694 P.2d at 1266.

If a defendant fails to make an objection at trial, review of the matter is limited to whether the defect rises to the level of plain error. Plain error is found only if the alleged impropriety so undermined the fundamental fairness of the trial as to cast serious doubt on the reliability of the judgment of conviction. *People v. Boehmer,* 872 P.2d 1320 (Colo.App.1993).

## A.

Defendant first contends the trial court applied a more restrictive standard to him regarding evidentiary matters than to the prosecutor. We disagree.

Defendant points to many instances in which the court allowed the prosecutor to introduce statements of hearsay or introduce evidence without sufficient foundation. The record reflects that defendant failed to raise a timely objection to any of this evidence. Therefore, the court's decisions are reviewed under the plain error standard.

■ The trial court did not have a duty to act as defendant's attorney and to object whenever the prosecutor may have improperly introduced evidence. Viewing the record in its entirety, we conclude that the court dealt with both parties in a fair and unbiased manner.

For example, defendant did not object to, and the trial court permitted, hearsay statements elicited by the prosecutor in examining an investigative officer. However, later in the trial when the prosecutor timely and properly objected to defendant's attempt to introduce hearsay statements, the trial court overruled the objection observing, "[t]his is a sauce for goose, sauce for gander rule."

In our view, this reflects the court's attempt to be evenhanded in overseeing the proceedings.

Defendant also directs us to instances in the record in which the court interrupted him or warned him regarding time limitations. While these appear in the record, they reflect on the time delays occasioned by defendant's self-representation and not on any bias on the part of the court.

Defendant also claims the court placed time pressures upon him that it did not place upon the prosecutor. From the record, it is clear defendant's cross-examination slowed the People's case, and that his own case presentation was slower than it would have been had he been represented by counsel. The court had an interest in assuring the trial proceeded efficiently; however, it did not prevent defendant from thoroughly examining witnesses, nor did its concern about time limitations prevent defendant from putting on all of his witnesses.

None of the trial court's actions, individually or in the aggregate, undermined the fundamental fairness of defendant's trial.

## B.

Defendant next argues the trial court undermined the fairness of the proceedings by allowing the prosecutor to introduce the issue of defendant's prior misdemeanor conviction in rebuttal. We disagree.

■ At the beginning of trial, the parties discussed defendant's prior conviction and the prosecution indicated it would not raise the issue. However, defendant opened the door during his case-in-chief by asking a number of his witnesses about his general character for peacefulness.

When a defendant opens the door to the issue of his character, the prosecution may use defendant's prior convictions, including misdemeanors, in rebuttal. *People v. Pennese,* 830 P.2d 1085 (Colo.App.1991).

In addition, the court expressly instructed the jury to consider evidence of defendant's past crimes only to impeach the credibility of defendant's character witnesses.

The trial court is in the pre-eminent position to determine the potential effects of the allegedly prejudicial statements on the jurors, and we perceive no abuse of its discretion in the ruling at issue here. *See People v. Jacobs,* 179 Colo. 182, 499 P.2d 615 (1972).

## C.

Further, defendant contends the language used by the prosecutor in closing argument inflamed the passions of the jury. We disagree.

The prosecution is not permitted to make remarks calculated to evoke bias or prejudice, especially references to defendant's race, religion, or ethnic background. It is within the trial court's discretion to determine whether prosecutorial argument rises to the level of misconduct. *Harris v. People,* 888 P.2d 259 (Colo.1995).

Here, in closing argument, the prosecutor characterized defendant's relationship with the victim as a "cycle of violence," and later stated that: "[I]t's embarrassing to be a victim of violence." We do not consider these remarks as rising to the level prohibited in *Harris.*

Judgment affirmed.

METZGER and HUME, JJ., concur.