2015 COA 54

**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Thomas Lee JOHNSON, Defendant–Appellant.**

**Court of Appeals No. 09CA1633**

Colorado Court of Appeals,
Div. III.

Announced May 7, 2015

Cynthia H. Coffman, Attorney General, Katherine A. Hansen, Senior Assistant Attorney·General, Denver, Colorado, for Plaintiff–Appellee

Douglas K. Wilson, Colorado State Public Defender, Adam Mueller, Deputy State Public Defender, for Defendant–Appellant

Opinion by JUDGE RICHMAN

¶ 1 Defendant, Thomas Lee Johnson, appeals the judgment of conviction entered on jury verdicts finding him guilty of first degree murder, trespass, and criminal mischief. He argues that he was denied his constitutional right to self-representation, and we agree. Therefore, we reverse his conviction and remand the case for a new trial.

## I. Background

¶ 2 A jury found defendant guilty of first degree murder, trespass, and criminal mischief; the district court sentenced him to life in prison. A division of this court reversed the judgment due to instructional error and remanded the case for a new trial. *People v. Johnson,* (Colo.App. No. 02CA0445, May 4, 2006), 2006 WL 1173415 (not published pursuant to C.A.R. 35(f)).

¶ 3 Defendant had been represented by the public defender in his first trial. On remand, the district court appointed alternate defense counsel (ADC) because defendant was a potential witness in another case being handled by the same public defender. However, defendant never testified in that case. Soon after being appointed, and many months before the scheduled retrial, ADC moved to withdraw.

¶ 4 The court held a hearing to address the issue. ADC argued that the conflict of interest which had prompted their appointment had disappeared and that, given the complexity of the case and the public defender's involvement in the first trial, the court should reappoint the public defender. Alternatively, ADC argued that defendant should be allowed to proceed pro se, as he had repeatedly indicated "in no uncertain terms" his desire to do so. After further discussion, the

court concluded that because issues related to the conflict of interest could reemerge, it would err on the side of caution and decline to reappoint the public defender.

¶ 5 The court then turned its attention to whether defendant should be allowed to represent himself. Following *People v. Arguello*, 772 P.2d 87, 92 (Colo.1989), and the guidelines of the Colorado Trial Judges Benchbook, the court carefully and thoroughly questioned defendant at length. A summary of salient portions of defendant's answers follows:

- defendant understood that he already had court-appointed counsel;
- he felt that he could "do a better job" and resolve things more quickly without his counsel;
- he was not under the influence of any substances which might interfere with his ability to make decisions;
- he had been found competent to stand trial and had not been diagnosed with any mental issues (though he conceded that he had features that were consistent with being "self-narcissistic");
- he had "no concerns" about any mental health issues that could prevent him from being able to proceed;
- he believed he might be able to work out a deal with the prosecutor to avoid going to trial;
- he had met with ADC about three times;
- he had seven-and-a-half years of experience on his case, while ADC had obtained the case file just three weeks prior to the hearing;
- he felt "that things would go a lot faster and a lot easier" if he represented himself;
- though he did not have experience with any other felony trials, he was "familiar with court procedures," and, as a "jailhouse lawyer," he had spent as much time as he could studying in the law library and helping other inmates with pro se filings and Crim. P. 35(c) motions, which he considered his area of "expertise";
- he realized that he faced the possibility of life in prison without parole;

- he had a twelfth-grade education but no legal training;
- he had never selected a jury in a felony case;
- to determine what questions he could ask during voir dire, he would consult the Colorado Rules of Criminal Procedure;
- he stated, "I do have the experience or the opportunity to review what was done in my first trial, so it's not like I'm actually doing this the first time around";
- he was not aware that jurors could be allowed to ask questions of witnesses;
- he understood that a *Curtis* advisement pertained to his decision about whether or not he would testify;
- in response to the court's question about how he might testify if he were representing himself, defendant stated, "I'm going to testify in the narrative";
- he understood that he could use the power of subpoena to bring in witnesses, though he would "have to have somebody serve them";
- he indicated that he intended to ask the court to reconsider its denial of his motion to change venue, though the court advised him that his status as a pro se party would not be a basis for changing the prior ruling on that issue;
- defendant acknowledged that an attorney could be of great help to him at trial and that he faced "a grave risk" in representing himself;
- in response to the court's labeling this "a murder case," defendant responded, "I don't consider it a murder case, I consider it a homicide case," explaining that he also considered it to be "a self-defense case";
- he understood that his prior conviction had been reversed due to a faulty jury instruction on self-defense, and that the rulings made in his prior trial would remain the law of the case, with the exception of the erroneous jury instruction;
- he understood that anything he said in court could be used against him and that if he made a mistake, he would not be

able to file a Crim. P. 35(c) motion "against [him]self";

- he understood that he would not get special treatment, stating, "I'm not asking for any," and that he would be bound by the decisions he made, thereby possibly waiving those issues for purposes of appeal;

- he stated, "I just look for when it comes to the trial, it's a step-by-step process, and to be able to tell my story is essential, and I could do a very good job of doing that";

- he knew that if he chose to testify, the prosecution could cross-examine him and bring up any prior felony convictions, though he did not have any;

- in response to the court's question as to whether the advice of counsel would be helpful in determining whether he should testify, defendant declared that he had already decided that he would;

- when given the opportunity to ask questions of the court, he stated that he did not have any at that time; and

- he indicated that he was not dissatisfied with his counsel and that he was not asking the court to appoint different counsel.

¶ 6 The court then asked if ADC or the prosecution wanted to make a further record. The prosecution made explicit its intention not to negotiate a plea bargain in the case. Defendant responded that this did not change his desire to represent himself. The prosecution also requested that the court ask some follow-up questions in accordance with the Benchbook, and the court questioned defendant further. Defendant reaffirmed his understanding that he would be able cross-examine the witnesses for the prosecution and again acknowledged that he could face life in prison without parole if convicted. He also stated that he did not wish to discuss the matter of his representing himself with ADC, the public defender, or anyone else.

The court further advised defendant that

- he would not be able to revoke his waiver of counsel, citing *People v. Price,* 903 P.2d 1190 (Colo.App.1995);

- the same rules that apply to attorneys would apply to him; and

- "most people who represent themselves in high-level, serious felony and homicide cases are convicted."

¶ 7 The court then denied defendant's request to represent himself, finding that although it was made voluntarily, it was not made knowingly and intelligently:

The Court, in considering all the circumstances, nature of the charges, the complexity of the issues involved with the self-defense instructions and the issues raised based on the testimony, the complicated evidentiary issues that will result around that, even though there has been a previous trial in his case—which was the one thing that bodes in your favor, Mr. Johnson—that when I balance all these things, given the complexity of the legal issues, the seriousness of the charges, the question of what will be done throughout all phases of this case, the traps, the legal issues that you may not understand and you can step into that would be very prejudicial to you, put you in a position that you could never waive them or never bring them up again on appeal or somehow tried to do an end run on the decision of the Court, this—just overall, based on all these circumstances, does not find that your waiver is knowingly and intelligently made.

It's not that I'm finding that you're not an intelligent person. I think you finished high school. You articulated here in court that you understand how to express yourself, so it's not saying that you are not intelligent.

The Court simply finds at this point that it is not a knowing and intelligent waiver of right to counsel for all the reasons that have been discussed here by the Court and the factors that will be before the Court.

¶ 8 Discussion about possibly appointing advisory counsel followed, but the court did not alter its ruling.

¶ 9 Several months later, but still well before the scheduled trial date, the prosecution moved the court to reconsider its ruling. The motion stated that defendant had "attempted to make decisions different than the counsel who, from his perspective, were forced on him." At a subsequent hearing, the prosecution stated that defendant had

expressed an interest in talking with the police department and the district attorney's office, and that, contrary to defendant's wishes, his counsel had prevented such communication. Moreover, because defendant had representation, the district attorney's office was ethically prohibited from communicating directly with him. Although ADC did not oppose the prosecution's motion, the court denied it.

¶ 10 At the beginning of his second trial, defendant reiterated his desire to represent himself, and the prosecution reiterated its position that he should be allowed to do so:

> It is the State's contention, Judge, that he is competent to make that decision, that it is a knowing, intelligent, voluntary decision.
>
> I perceive this, Judge, what will unfold in this instance is that if in the event Mr. Johnson is convicted, he will come before the Court in some fashion, appellate court, motion for a new trial, whatever, and say, I would not have been convicted if I represented myself. I didn't want to do what the captain of that ship did in this trial. And the Court made me have a captain that I didn't want. If I had represented myself, I would have done this differently. And I would not have been convicted. That's what I think will unfold in this case, Judge.
>
> And I know the Court's rulings, Judge, and I don't want to argue with you again about that. But I would just ask you to please take another look at that since it has been brought up by the defense and perhaps make another inquiry of Mr. Johnson.
>
> I just see this, Judge, as being the issue on appeal if Mr. Johnson were to be convicted.

¶ 11 The court then questioned defendant, who indicated that he still wanted to proceed pro se but that, if allowed to do so, he would need a continuance because he was not prepared to start trial.

¶ 12 The court noted that defendant had not renewed his request to represent himself when the trial was continued, and then stated,

> Court doesn't have any concern with the idea that you knowingly now want to do this. But the question of whether it is an intelligent waiver based on the fact that you are not prepared for trial, you haven't prepared for trial, and the previous findings that the Court made a year ago about, again, the same issue of whether it was an intelligent waiver, not the issue of whether it was knowing, you knew what you were doing.
>
> But given all of the factors of this case, the Court continues to find that it is not an intelligent waiver of your right to counsel.

The court's statement that defendant's request to represent himself was knowing, but not intelligent, appears to have narrowed its earlier ruling. But the court expressly incorporated its previous findings into its latest denial, while also finding that defendant was trying to manipulate the court system and delay his trial:

> Mr. Johnson, the Court found while he had some knowledge of the law and some familiarity with this case because it had been to trial one time before, that issues were complex, legal issues, or particularly the issue of jury instructions. And the issues of self-defense were in conflict with some of Mr. Johnson's positions, and that his ability to represent himself and to make a knowing, voluntary, and intelligent, and the stress is on the word intelligent, waiver of the right to counsel.
>
> The Court further found that Mr. Johnson's request[s] were deemed by the Court to be more of a manipulation of the court system. They were interposed for delay because he didn't want to cooperate with certain individuals.

Thus, the court declined to reconsider its previous ruling on defendant's request to proceed pro se.

¶ 13 Defendant made a final request to self-represent on the third day of his second trial. The court denied the request based on its prior findings and rulings. Defendant was represented by ADC throughout the second trial, and the jury returned guilty verdicts on all three charges.

## II. Issues on Appeal

¶ 14 Defendant argues that the district court violated his right to represent himself. Because we agree that he is entitled to a new trial on this basis, we need not reach his other contentions of error which may not arise on retrial. However, we do address his argument regarding the sufficiency of the evidence to support his convictions for trespass and criminal mischief. We conclude the evidence was sufficient.

### A. The District Court Improperly Denied Defendant His Sixth Amendment Right to Self–Representation

¶ 15 We review de novo whether a defendant was denied the right to self-representation. *See People v. Abdu*, 215 P.3d 1265, 1267 (Colo.App.2009); *People v. Stanley*, 56 P.3d 1241, 1244 (Colo.App. 2002); *see also United States v. Smith*, 413 F.3d 1253, 1279 (10th Cir.2005) ("When a motion to proceed pro se is made, we review de novo whether a constitutional violation occurred and for clear error the factual findings underlying the district court's decision to deny the motion."), *overruling on other grounds recognized by United States v. Fishman*, 645 F.3d 1175 (10th Cir.2011). Denial of the right to self-representation is structural error, which, if preserved, requires reversal. *Krutsinger v. People*, 219 P.3d 1054, 1058 n. 1 (Colo.2009); *see also Tumentsereg v. People*, 247 P.3d 1015, 1018 n. 2 (Colo.2011).

¶ 16 The right to self-representation is guaranteed by the Sixth Amendment to the United States Constitution. *Faretta v. California*, 422 U.S. 806, 816, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975); *Arguello*, 772 P.2d at 92. The Colorado Constitution reinforces this right. Colo. Const. art. II, § 16; *Arguello*, 772 P.2d at 92. "The right is personal to the defendant and may not be abridged by requiring a defendant to accept a lawyer when he desires to proceed *pro se*." *People v. Mogul*, 812 P.2d 705, 708 (Colo.App.1991); *see also Reliford v. People*, 195 Colo. 549, 552, 579 P.2d 1145, 1147 (1978) ("[A] trial court's ability to force counsel upon an unwilling defendant is limited.").

¶ 17 Even if a defendant properly invokes the right to self-representation, however, the defendant must still show that he or she "knowingly and intelligently" relinquishes the benefits of representation by counsel. *Faretta*, 422 U.S. at 835, 95 S.Ct. 2525. The trial court should conduct a thorough and comprehensive inquiry on the record to determine whether the defendant is aware of the nature of the charges, the range of allowable punishments, possible defenses, and the risks of proceeding pro se. *United States v. Willie*, 941 F.2d 1384, 1388 (10th Cir.1991).

¶ 18 To be permitted to proceed pro se, a defendant must have "an intelligent understanding of the consequences of so doing." *Martinez v. People*, 172 Colo. 82, 85, 470 P.2d 26, 28 (1970).

> Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open.

*Faretta*, 422 U.S. at 835, 95 S.Ct. 2525 (internal quotation marks omitted); see also *Mogul*, 812 P.2d at 709 ("A defendant's technical legal knowledge is not a factor to be considered by the trial court in deciding whether to grant or deny the motion."). But in this context, "intelligently" does not refer to the wisdom of the waiver; rather, the court must honor a defendant's request to self-represent if it is satisfied that defendant knows what he or she is doing and understands the consequences. *People v. Smith*, 881 P.2d 385, 388 (Colo.App.1994) (citing *People v. Lucero*, 200 Colo. 335, 340, 615 P.2d 660, 663 (1980)).

¶ 19 Because a pro se defense is usually a bad one, courts must indulge every reasonable presumption against finding a waiver of the fundamental right to counsel. *See Abdu*, 215 P.3d at 1267. Also, a defendant's request for self-representation must be unequivocal, and even where an unequivocal request is made, the right may be waived through subsequent conduct indicating the defendant's vacillation on, or abandonment of, the issue. *Id.* at 1268. Further, a request for self-representation may be denied if the court determines that it was "made for purposes of delay or to gain tactical advan-

tage ... [or if] the request may hinder the administration of justice." *Mogul,* 812 P.2d at 709.

¶ 20 The record shows that the district court conducted a thorough and comprehensive inquiry of defendant. Still, while clearly attempting to ensure that defendant would receive a fair trial, the court nonetheless erred when it determined that his request to self-represent was not knowing and intelligent.

¶ 21 In reaching this decision, the court emphasized the seriousness of the charges against defendant as a factor that weighed heavily against allowing him to proceed pro se. However, a defendant exercising his or her informed free will may knowingly and intelligently decide to self-represent, even when charged with a serious offense. *See Reliford,* 195 Colo. at 554, 579 P.2d at 1148 (second degree murder); *Martinez,* 172 Colo. at 84–85, 470 P.2d at 27–28 (assault with intent to commit robbery); *Mogul,* 812 P.2d at 707 (first degree sexual assault). Having already been given a life sentence after the first trial, defendant knew that he could receive the same sentence after retrial, and he expressly acknowledged on multiple occasions that he was facing a possible sentence of life without parole. *See Faretta,* 422 U.S. at 835, 95 S.Ct. 2525. He also stated that he understood he would be bound by the decisions he made at trial and indicated that he was familiar with Crim. P. 35(c) motions and some possible appellate issues.

■■■ ¶ 22 The court also focused on defendant's lack of legal knowledge and the risk that this lack of knowledge could create procedural problems throughout the trial. But lack of "technical legal knowledge" should not be considered when a court rules on a motion to proceed pro se. *Id.* at 836, 95 S.Ct. 2525; *see also Mogul,* 812 P.2d at 709; *United States v. McKinley,* 58 F.3d 1475, 1481–82 (10th Cir.1995) ("Nor do we believe that a defendant's waiver of counsel is not knowing and intelligent merely because he attempts self-representation in the face of what most would consider unquestionably inferior skills.").

¶ 23 Other factors, not emphasized by the district court, weigh heavily in favor of allowing defendant to proceed pro se. His requests to represent himself were unequivocal, and he never wavered or vacillated on this issue. *See Abdu,* 215 P.3d at 1267–68. Nor were his requests conditioned in any way upon the court taking some other action in the case. *Cf. People v. Moody,* 630 P.2d 74, 79 (Colo.1981) ("[D]efendant's desire to represent himself was contingent upon the granting of a motion for mistrial."). Moreover, he first requested to represent himself well in advance of his scheduled retrial, and there is no indication that he made his initial request for purposes of delay or tactical advantage. *See Mogul,* 812 P.2d at 710. Although the court stated on the first day of trial that defendant's request was being made for purposes of delay, only the timing of the *renewed* request could support that inference.

¶ 24 In addition, as noted by the district court, defendant had the advantage of having seen and participated in his first trial, so he had a better sense of what to expect at trial than many defendants seeking to represent themselves.

¶ 25 Under these circumstances, the court erred in denying defendant the right to represent himself, and reversal is required.

**B. The Evidence Was Sufficient to Support the Trespass and Criminal Mischief Convictions**

■■■ ¶ 26 One month before the victim was stabbed to death in her home in Steamboat Springs, her vehicle was damaged while it was parked in the driveway. A cutting instrument was used to cause significant damage to the vehicle, inside and out. The vandalism of the victim's vehicle prompted the prosecution to charge defendant with trespass and criminal mischief.

¶ 27 At trial, defendant's girlfriend testified that he had sexually assaulted her two nights before the vandalism, and that, after she left that night, he was not able to reach her for several days. The night after the assault, she stayed with the victim, her best friend, in Steamboat Springs. The following night, defendant's girlfriend stayed with an aunt. During this time, she did not return defendant's phone calls or respond to his messages. According to defendant's girl-

friend's testimony, defendant knew that the victim was her best friend, and he had been to her home on at least one prior occasion.

¶ 28 The prosecution presented evidence that on both the night of the vandalism and the night of the murder, defendant had rented a car near Denver and driven about 400 miles before returning it, enough for a roundtrip to Steamboat Springs. In a phone conversation with his ex-wife, which police heard and partially recorded, defendant admitted that he had gone to the victim's home on the night of the murder. He argued at trial that he acted in self-defense, after she came at him with a knife, by repeatedly stabbing her with it.

¶ 29 In addition, according to the prosecution's evidence, defendant knew that the victim had also been a victim of sexual assault, and believed that she was encouraging his girlfriend to go forward with the case against him. Thus the prosecution's theory was that he vandalized the victim's car to send a message that he did not want her interfering with his relationship with his girlfriend, and that he ultimately executed his attack on the victim in much the same manner as he executed the attack on her vehicle.

¶ 30 Despite all this, defendant argues that the evidence at trial was insufficient to support his convictions for trespass and criminal mischief because no physical evidence connected him to the vandalism of the victim's vehicle, nor were there any eyewitnesses. We disagree.

 ¶ 31 We review de novo whether the evidence is sufficient to support a conviction. *Dempsey v. People,* 117 P.3d 800, 807 (Colo. 2005).

¶ 32 "When reviewing the sufficiency of evidence, we must determine whether any rational trier of fact might accept the evidence, taken as a whole and in the light most favorable to the prosecution, as sufficient to support a finding of guilt beyond a reasonable doubt." *People v. Dutton,* 2014 COA 51, ¶ 23, 2014 WL 1647638. The same test for measuring the sufficiency of evidence applies whether the evidence is direct or circumstantial. *See People v. Martinez,* 165 P.3d 907, 915 (Colo.App.2007) (citing *People v. Bennett,* 183 Colo. 125, 132, 515 P.2d 466, 469 (1973)). But, "[w]e may not serve as a thirteenth

juror by resolving conflicts in the evidence." *People v. Nerud,* 2015 COA 27, ¶ 32, 2015 WL 1089879.

¶ 33 Although no direct evidence established that defendant committed the vandalism, we cannot say the circumstantial evidence was insufficient to prove beyond a reasonable doubt that he did so. Thus, he may be retried on the trespass and criminal mischief charges.

### III. Conclusion

¶ 34 The judgment is reversed, and the case is remanded with directions to grant a new trial. *See Mogul,* 812 P.2d at 710. If defendant continues to assert that he should be allowed to represent himself, the court must again inquire of him to ensure that he "knowingly and intelligently" relinquishes the benefits of representation by counsel. *Faretta,* 422 U.S. at 835, 95 S.Ct. 2525. If so, then he must be allowed to represent himself. However, the court may appoint standby or advisory counsel, even if defendant does not want it. *McKinley,* 58 F.3d at 1483; *see also People v. Romero,* 694 P.2d 1256, 1265 (Colo.1985) ("Although a salutary practice to be strongly encouraged even over the objection of an accused, the appointment of advisory counsel remains essentially a matter of trial court discretion."); *Mogul,* 812 P.2d at 709.

¶ 35 The prosecution may contend that defendant is entitled only to a retrial at which he represents himself because if he is represented by counsel at the retrial, he will receive again what the state has already once provided him. Such a contention would ignore that while the Sixth Amendment guarantees defendant the right to represent himself, it also provides for him the right to assistance of counsel. *See McKinley,* 58 F.3d at 1483 (A criminal defendant is entitled to a retrial free of constitutional error and "must be allowed to exercise all of his [or her] constitutional rights, including the right to have assistance of counsel and the right to represent himself." (internal quotation marks omitted)). Thus, in deciding which component of his Sixth Amendment right he wishes to exercise on retrial, defendant is entitled to assess the circumstances then confronting

him and to decide whether representation by counsel or proceeding pro se will better serve his interests at the retrial. *See Johnstone v. Kelly,* 812 F.2d 821, 822 (2d Cir.1987).

JUDGE DAILEY and JUDGE WEBB concur.