Opinion by Judge BERNARD.
¶ 1 This appeal analyzes four issues. The first concerns the intersection of mental illness and the right of defendants in criminal cases to represent themselves in trials, such as the one that was held in this case. On the one hand, the Fifth Amendment's Due Process Clause dictates that defendants who are so mentally ill that they do not understand the proceedings or are unable to assist their attorneys are incompetent to stand trial. On the other hand, defendants have a constitutional right, under the Sixth and Fourteenth Amendments, to waive their right to counsel and act as their own attorneys at trial.
¶ 2 We address here a sort of "gray area" found at this intersection. If defendants suffering from mental illness are competent to stand trial, must courts always honor their election to waive their right to counsel? Or, may courts consider how defendants' mental illness might adversely affect their performance during their trials? Relying on Indiana v. Edwards, 554 U.S. 164, 171, 128 S.Ct. 2379, 171 L.Ed.2d 345 (2008), we conclude that courts may deny such requests made by defendants who are competent to stand trial, but whose mental illness renders them mentally incompetent to conduct their trials by themselves. In reaching this result, we are careful to point out that the Constitution does not mandate this result; it merely permits it. People v. Wilson, 397 P.3d 1090, ---- (Colo.App.2011).
¶ 3 The second and third issues also arise out of the trial that was held in this case. Did the trial court make adequate inquiries into defendant's allegations that his trial counsel was ineffective and labored under a conflict of interest? We conclude that it did. And is defendant's conviction at trial for possession of a controlled substance barred by double jeopardy principles because defendant was also convicted of distribution of a controlled substance? We conclude that it is not.
¶ 4 The fourth issue considers to whom the decision to withdraw a guilty plea rightfully belongs. Is it the defendant's decision, because the decision to plead guilty is the defendant's? Or, is it trial counsel's decision because it involves the sorts of strategic decisions normally reserved to counsel? We conclude that the decision to ask a court to withdraw a guilty plea is the defendant's. Defense counsel is obligated to advise the defendant about the consequences of such a decision, but the defendant should have the last word.
*379 ¶ 5 As a result of these conclusions, we remand the case for further proceedings on (1) the judgments of conviction of defendant, Rashaim Malique Davis, for possession and distribution of a controlled substance entered after a jury verdict in case 06CR10189; and (2) the judgments of conviction for two counts of possession of more than one gram of a controlled substance entered as a result of guilty pleas in cases 05CR1486 and 05CR3846.
I. Background
A. Charges
¶ 6 Defendant was charged with seven felony drug offenses in three separate cases, which are all the subject of this appeal.
¶ 7 In the first case, number 06CR10189, defendant was charged with possession and distribution of a schedule II controlled substance. He proceeded to trial and a jury found him guilty on both counts.
¶ 8 In the second case, 05CR1486, defendant was charged with possession of more than one gram of a schedule II controlled substance, a class four felony, and possession with intent to distribute a schedule II controlled substance, a class three felony. In the third case, 05CR3846, defendant was charged with two counts of possession of more than one gram of a schedule II controlled substance and one count of possession with intent to distribute a schedule II controlled substance. As a result of a plea agreement, defendant pled guilty to one count of possession of more than one gram of a controlled substance in each case. The prosecution dismissed the other charges and agreed not to file habitual criminal charges.
B. Defendant's Conduct
¶ 9 In the first case, 06CR10189, defendant was originally represented by an attorney from the public defender's office. Defendant threatened to harm this attorney, who took the threats seriously. In response to the threats, a female investigator from the public defender's office met with defendant and asked him if he would participate in some "mini-exams." Defendant declined, and warned the investigator that "when [he is] uncomfortable he feels the need to hit people and he might have to hit [her]."
¶ 10 The public defender asked the court to allow him to withdraw from representing defendant. He told the court that defendant's threats were "a result of the fact that [he] feels that ... all the lawyers involved in this case [and the investigator] ... [are] out to do something bad to him."
¶ 11 The court allowed the public defender to withdraw and appointed substitute trial counsel to represent defendant.
¶ 12 Defendant's competence to proceed was called into question repeatedly before his trial. The issue was originally raised by the public defender. That attorney stated that his experience "throughout the proceedings" had been that defendant "exhibit[ed] [a] flat affect, bordering on catatonic," and would not discuss the case with him. Defendant had also refused to communicate with the attorney who represented him on the second and third cases, 05CR1486 and 05CR3846.
¶ 13 The trial court ordered a competency evaluation. The court also advised defendant that he had a right not to speak to the examining psychiatrist, but that his refusal to do so could be considered in determining whether he was competent.
¶ 14 The record contains reports from three competency evaluations. Defendant refused to participate in any of them. The first evaluator reported that defendant was "very reserved and watchful" during their brief encounter, and noted that his medical chart indicated that he suffered from "chronic bi-polar [disorder] and depression."
¶ 15 The second evaluator reported that defendant sat "expressionless and silent" for approximately ten minutes while the evaluator attempted to encourage his participation, and then defendant left the interview room to return to his cell. The evaluator further stated:
Although it is my understanding that the default position when a criminal defendant refuses to participate in a Competence to Proceed evaluation is to assume the defendant is competent; it is possible that [defendant's] declination to participate in the present evaluation was symptomatic of *380 paranoid schizophrenia or some other mental disease or defect. It is equally possible that his refusal was based on rational reasons.
¶ 16 The third evaluator met with defendant for approximately ten minutes. He told the evaluator that he did not know or understand why he was in custody or what the purpose of the evaluation was, even after the evaluator provided an explanation. He refused to answer most of the evaluator's questions and stated, "Whenever I feel uncomfortable, I react." When questioned about the nature of that reaction, he reported that he leaves, and then he left the room.
¶ 17 The third evaluator concluded that defendant was "competent to proceed and was refusing to participate ... because of a desire to not be cooperative with the legal process." She also reported, however, that his medical records showed he had been diagnosed with attention deficit/hyperactivity disorder and post-traumatic stress disorder in childhood and with depressive disorder by jail medical staff. He had been prescribed medication for depressive disorder, but had complained that it was not working and had apparently stopped taking it.
¶ 18 The trial court ultimately determined that defendant was competent to proceed.
¶ 19 Defendant then told the court that he wished to waive his right to counsel and represent himself at trial in the first case, 06CR10189. The court asked substitute trial counsel whether she thought defendant could do so. She replied that she thought he was competent, but she added, "I think it would be very ill-advised for [defendant] to proceed pro se but that's all I really have to add."
¶ 20 The court carefully advised defendant of his right to represent himself and the risks associated with self-representation. After reviewing the various competency reports, the court found that defendant suffered from "psychiatric issues" that warranted denying this request.
¶ 21 The trial court repeatedly expressed concern that defendant's desire to dismiss his attorney was the product of paranoid thinking. Defendant admitted that he was taking medication for bipolar disorder and paranoia, and that the medication was not entirely effective. He further acknowledged that the paranoia had caused him not to trust the public defender's office, and that he did not remember a time when he did not have paranoia.
¶ 22 On one occasion, defendant became angry and refused to respond to the trial court's questions when it attempted to address his request for self-representation. At the next hearing, the trial court stated:
[T]here's a big difference it seems to me between being competent which is about the lowest level of functionality and being competent enough to knowingly, voluntarily and intelligently waive your right to counsel and I just need to have some assurance that [defendant] isn't in that big area between competence and an ability to knowingly, voluntarily and intelligently waive his right to counsel.
I have to say that when I've had interchanges with [defendant], he seems articulate. He-I don't think there's any question that he understands what we're talking about. This waiver seems knowing, voluntary and intelligent to me but I also [think] there are some psychiatric issues or maybe some psychiatric issues bubbling below the surface that I want to have a feel for before I make this important decision about [defendant].
The trial court ultimately denied defendant's request.
[I]n my judgment there is some difference between being competent to proceed which is quite a minimal inquiry and having the mental capacity to knowingly, voluntarily, and intelligently waive your right to counsel. And [defendant] ... though competent and though at all times articulate, is confused. I think his mental condition contributes to his confusion. I think he doesn't trust his lawyers. I don't think he trusts the system. And I think all of that is a part of his mental problems.
¶ 23 Elaborating in a written order, the trial court found that defendant's desire to represent himself was
driven, at least in part, by the same personality disorders that caused him to stare *381 motionless at court appearances, to sit silently before examining psychiatrists, to refuse to cooperate with his own lawyers, and to refuse, until recently, to answer [the trial court's] questions about his desire for self-representation.
¶ 24 Defendant pled guilty in the second and third cases, 05CR1486 and 05CR3846. Before sentencing, he filed pro se motions requesting to withdraw those guilty pleas. The court did not address those motions because substitute trial counsel did not want to pursue them.
II. Jury Trial (Case 06CR10189)
A. Competency and Self-Representation
¶ 25 Defendant contends that the trial court erred by denying his request to dismiss counsel and represent himself. We disagree.
1. General Principles
¶ 26 Defendant's argument concerning the proper standard for assessing his competency to waive his right to counsel and represent himself at trial raises a question of law. We review it de novo. See Wilson, 397 P.3d at ----.
¶ 27 Defendants must be mentally competent to stand trial. To be competent, defendants cannot have
a mental disability or developmental disability that prevents [them] from having sufficient present ability to consult with [their] lawyer[s] with a reasonable degree of rational understanding in order to assist in the defense or [that] prevents [them] from having a rational and factual understanding of the criminal proceedings.
§ 16-8.5-101(4), C.R.S.2011. This standard is called the Dusky standard, after Dusky v. United States, 362 U.S. 402, 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960), which articulated it. See also People v. Palmer, 31 P.3d 863, 865-66 (Colo.2001) ; Wilson, 397 P.3d at ----.
¶ 28 Defendants also have a right under the Sixth and Fourteenth Amendments, subject to certain limitations, to represent themselves. U.S. Const. amend. VI ; Colo. Const. art. II, § 16 ; see also Faretta v. California, 422 U.S. 806, 819-20, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975) ; People v. Moody, 630 P.2d 74, 77 (Colo.1981). These limitations establish that "the right of self-representation is not absolute." Edwards, 554 U.S. at 171, 128 S.Ct. 2379 (collecting cases in which circumstances justified appointment of counsel over defendant's objection). Thus, "[t]he grant or denial of a defendant's request to so proceed lies within the discretion of the trial court." People v. Shepard, 989 P.2d 183, 185 (Colo.App.1999) ; see also People v. Mogul, 812 P.2d 705, 709 (Colo.App.1991).
¶ 29 This case involves the issue whether the gray area between competency and impairment caused by mental illness requires limitations on the right to self-representation. The United States Supreme Court addressed one part of this gray area in Godinez v. Moran, 509 U.S. 389, 113 S.Ct. 2680, 125 L.Ed.2d 321 (1993).
2. Godinez
¶ 30 The defendant in Godinez had a mental illness that was being treated with medication. After being found competent to stand trial, he asked the court to allow him to represent himself so that he could plead guilty to the original charges. The court accepted his waiver of counsel and subsequent guilty plea. On postconviction review, he claimed that he had been mentally incompetent to represent himself. Id. at 392-93, 113 S.Ct. 2680.
¶ 31 The issue before the Supreme Court was whether the Due Process Clause required that the competency standard for pleading guilty or waiving the right to counsel should be more rigorous than the Dusky standard. The Court concluded that there should be no difference. Id. at 395-402, 113 S.Ct. 2680. The Court's rationale included four pertinent observations.
¶ 32 First, the Dusky standard is adequate for defendants who plead guilty or not guilty. Id. at 399, 113 S.Ct. 2680.
¶ 33 Second, the decisions defendants make when deciding to plead guilty are not more "complicated" than the decisions they face during trial when represented by counsel.
*382 Therefore, "there is no reason to believe that the decision to waive counsel requires an appreciably higher level of mental functioning than the decision to waive other constitutional rights."Id.
¶ 34 Third, the concept of competency to represent oneself at trial does not include possessing or lacking technical legal knowledge. "[T]he competence that is required ... to waive [the] right to counsel is the competence to waive the right, not the competence to represent [themselves]." Id. at 399, 113 S.Ct. 2680 (emphasis in original).
¶ 35 Fourth, the Court recognized that assessing the validity of a waiver of the right to counsel requires two separate inquiries: the trial court must first determine that an accused is competent to waive the right; if so, it must next determine whether the waiver is knowing and voluntary. Id. at 400-02, 113 S.Ct. 2680. The inquiries are different:
The focus of a competency inquiry is the defendant's mental capacity; the question whether he has the ability to understand the proceedings. The purpose of the "knowing and voluntary" inquiry, by contrast, is to determine whether the defendant actually does understand the significance and consequences of a particular decision and whether the decision is uncoerced.
Id. at 401 n. 12, 113 S.Ct. 2680 (citations omitted; emphasis in original).
¶ 36 Fifteen years later, the Supreme Court decided Edwards.
3. Edwards
¶ 37 Godinez stated that the Sixth Amendment allows competent but mentally ill defendants to represent themselves and plead guilty. Edwards concluded that this holding did not resolve the question whether courts can deny such defendants the right to represent themselves at trial without running afoul of the Sixth and Fourteenth Amendments. Edwards, 554 U.S. at 173-74, 128 S.Ct. 2379.
¶ 38 Edwards holds:
[T]he Constitution permits judges to take realistic account of the particular defendant's mental capacities by asking whether a defendant who seeks to conduct his own defense at trial is mentally competent to do so. That is to say, the Constitution permits States to insist upon representation by counsel for those competent enough to stand trial under Dusky but who still suffer from severe mental illness to the point where they are not competent to conduct trial proceedings by themselves.
Id. at 177-78, 128 S.Ct. 2379. In other words, courts may insist that mentally ill defendants be represented at trial even though they understand the proceedings and are able to assist their counsel. Thus, Edwards establishes that, although competency to waive the right to counsel must be subjected to the same standard as competency to stand trial under Godinez, competency to represent oneself at trial may be evaluated under a heightened standard.
¶ 39 Three pillars support this ruling. The first is precedential. The Court's prior competency cases, such as Dusky, discuss the importance of counsel's representation at trial. These cases indicate that there is a meaningful difference between being competent to stand trial and deciding not to have an attorney at trial. The Court's self-representation cases, such as Faretta, suggest that the right to self-representation may be limited by a defendant's mental competency. Id. at 174-75, 128 S.Ct. 2379.
Second,
the nature of the problem before [the Supreme Court] cautions against the use of a single mental competency standard for deciding both (1) whether a defendant who is represented by counsel can proceed to trial and (2) whether a defendant who goes to trial must be permitted to represent himself. Mental illness itself is not a unitary concept. It varies in degree. It can vary over time. It interferes with an individual's functioning at different times in different ways.... In certain instances an individual may well be able to satisfy Dusky 's mental competence standard, for he will be able to work with counsel at trial, yet at the same time he may be unable to carry out the basic tasks needed to present his own defense without the help of counsel.
Id. at 175-76, 128 S.Ct. 2379.
¶ 40 Third, permitting certain mentally ill defendants to represent themselves at *383 trial undercuts important policy considerations. Self-representation does not affirm their dignity. Rather, "the spectacle that could well result ... is at least as likely to prove humiliating as ennobling" for them. Id. at 176, 128 S.Ct. 2379. Self-representation does not further the likelihood of a fair trial. Rather, "lack of capacity threatens an improper conviction or sentence." Id. Self-representation does not project a public appearance of fairness. Rather, "[n]o trial can be fair that leaves the defense to a man who is insane, unaided by counsel, and who by reason of his mental condition stands helpless and alone before the court." Id. at 177, 128 S.Ct. 2379 (quoting Massey v. Moore, 348 U.S. 105, 108, 75 S.Ct. 145, 99 L.Ed. 135 (1954) ).
¶ 41 Edwards recognizes that there can be different competency standards for determining whether defendants can stand trial and whether those who go to trial should be represented by counsel against their wishes. Id. at 175-76, 128 S.Ct. 2379. Indeed, the Court observed that, although the Dusky standard could provide some help, "given the different capacities needed to proceed to trial without counsel, there is little reason to believe that Dusky alone is sufficient." Id. at 177, 128 S.Ct. 2379.
¶ 42 However, beyond stating that the inquiry focuses on whether defendants are so mentally ill that they are incompetent to conduct their trials alone, id. at 178, 128 S.Ct. 2379, taking into consideration whether defendants are unable to carry out the basic tasks needed to present their defenses without the assistance of attorneys, id. at 175-76, 128 S.Ct. 2379, the Court nonetheless declined to adopt a more specific standard to govern this inquiry. Id. at 178, 128 S.Ct. 2379. The Court was careful in this context to reaffirm Godinez 's exclusion of the level of defendants' "technical legal knowledge" from this analysis. Id. at 172, 128 S.Ct. 2379.
¶ 43 Last, the Court made clear the importance of trial court observations. "[T]he trial judge ... will often prove best able to make more fine-tuned mental capacity decisions, tailored to the individualized circumstances of a particular defendant." Id. at 177, 128 S.Ct. 2379.
¶ 44 We must evaluate the trial court's decision here in light of Edwards because that case was announced while this appeal has been pending. See Lopez v. People, 113 P.3d 713, 716 (Colo.2005) (a decision of the United States Supreme Court is to be applied in cases pending on direct appeal when the opinion is announced).
¶ 45 We next look to decisions in other jurisdictions to determine how they have interpreted Edwards.
4. Post-Edwards Authority in Other Jurisdictions
¶ 46 Courts agree that Edwards did not announce a rule mandating that they deny the requests of mentally ill defendants to represent themselves at trial. See, e.g., United States v. DeShazer, 554 F.3d 1281, 1290 (10th Cir.2009) ( Edwards "reaffirmed that a court may constitutionally permit a defendant to represent himself so long as he is competent to stand trial"); People v. Taylor, 47 Cal.4th 850, 102 Cal.Rptr.3d 852, 220 P.3d 872, 890-91 (2009) ( "Edwards did not alter the principle that the federal constitution is not violated when a trial court permits a mentally ill defendant to represent himself at trial, even if he lacks the mental capacity to conduct the trial proceedings himself, if he is competent to stand trial and his waiver of counsel is voluntary, knowing and intelligent." (quoting State v. Connor, 292 Conn. 483, 973 A.2d 627, 650 (2009) )); In re Rhome, 172 Wash.2d 654, 260 P.3d 874, 881 (2011) ("Edwards does not require trial courts to evaluate mental health status in order to secure a valid waiver of counsel." (emphasis in original)).
¶ 47 Some states have left open whether they will answer the question that Edwards expressly avoided: should a standard more specific than the one set forth in Edwards be adopted for determining whether competent, but mentally ill defendants should be allowed to represent themselves at trial? See Taylor, 102 Cal.Rptr.3d 852, 220 P.3d at 883.
¶ 48 Other courts have concluded that they will apply the standard expressed in Edwards. For example, in Connor, the Connecticut Supreme Court exercised its supervisory *384 authority. It held that "upon a finding that a mentally ill or mentally incapacitated defendant is competent to stand trial and to waive his right to counsel at that trial, the trial court must make another determination, that is, whether the defendant also is competent to conduct the trial proceedings without counsel." Connor, 973 A.2d at 650-51 ; see also In re Amendments to Florida Rule of Criminal Procedure 3.111, 17 So.3d 272, 275 (Fla.2009) (Florida Supreme Court amended the rules of criminal procedure to require courts, when ruling on defendants' requests to represent themselves, to consider whether they "suffer from severe mental illness to the point where [they are] not competent to conduct trial proceedings by [themselves]"); Major v. Commonwealth, 275 S.W.3d 706, 722 (Ky.2009) (although defendant was competent under Dusky to assert his right to self-representation and to waive his right to counsel, the trial court could deny his request "because of his borderline competency"); State v. Baumruk, 280 S.W.3d 600, 610-11 (Mo.2009) (Edwards held that the standard for determining whether defendants are competent to stand trial is "lower" than the one for determining whether they are competent to represent themselves); State v. Lewis, 280 Neb. 246, 785 N.W.2d 834, 840 (2010) ("[W]e now hold that ... a criminal defendant's right to conduct his or her own defense is not violated when the court determines that a defendant competent to stand trial nevertheless suffers from severe mental illness to the point where he or she is not competent to conduct trial proceedings without counsel.").
¶ 49 We now turn to Colorado cases that have considered Godinez and Edwards.
5. Colorado Cases
¶ 50 Our supreme court has not analyzed Godinez or Edwards. Divisions of this court have analyzed both cases. For example, in People v. Woods, 931 P.2d 530, 534 (Colo.App.1996), the division held that Godinez established the standard a court should employ when deciding whether a defendant, who had some history of "infirmities" caused by a brain injury, was competent to waive counsel and represent himself at trial. People v. Mondragon, 217 P.3d 936, 940 (Colo.App.2009), cited Godinez for the proposition that the Dusky standard "applies equally to questions of a defendant's competence generally and to questions of a defendant's competence to choose to exercise or waive his constitutional rights." People v. Venzor, 121 P.3d 260, 262 (Colo.App.2005), referred to Godinez in the context of analyzing whether the defendant was entitled to a postconviction hearing to determine whether he had the mental capacity to enter a guilty plea.
¶ 51 Godinez and Edwards were both cited in People v. Wilson, 397 P.3d 1090, ---- (Colo.App.2011). There, the defendant was found incompetent to stand trial and was restored to competency. He then waived his right to counsel and represented himself at trial. In a postconviction motion, he alleged that he had not been competent to represent himself. On appeal, he argued that Edwards, which had been decided while his direct appeal was pending, required the trial court to apply a "heightened standard" to his decision to represent himself. Because it did not, he claimed that he should be given a new trial.
¶ 52 The division rejected this argument. It recognized that Edwards permits, but does not require, states to adopt a heightened standard of competency for the decision to waive counsel and represent oneself at trial. Wilson, 397 P.3d at ----. Because such a heightened standard is not required, the division concluded that it "need not address whether defendant was entitled to a hearing to present evidence that he was incompetent under any heightened standard" because, as recognized in Godinez, use of the Dusky standard was sufficient. Id.
¶ 53 Our next task is to determine how the preceding authority applies to this case.
6. Analysis of Precedent
¶ 54 We recognize that the use of a different standard to evaluate decisions made by competent, but mentally ill, defendants to represent themselves is not constitutionally required. See Edwards, 554 U.S. at 177-78, 128 S.Ct. 2379 ; Godinez, 509 U.S. at 399-400, 113 S.Ct. 2680 ; Wilson, 397 P.3d at ----.
*385 We nonetheless conclude that the additional standard described in Edwards should be applied in this case. This means that the trial court must determine on remand whether defendant was so mentally ill when he requested to represent himself that he was incompetent to conduct his trial without the assistance of counsel. This analysis must take into consideration whether he was unable to carry out the basic tasks needed to present his defense in counsel's absence. We emphasize, as did Godinez and Edwards, that this standard addresses defendant's mental capacity, not his technical trial skills or legal knowledge.
¶ 55 We reach our conclusion because:
1. We understand that our supreme court has the ultimate authority to resolve this issue, and it will have the last word on whether the additional Edwards standard should be adopted in Colorado. It has not yet done so. Further, we do not know how the supreme court will analyze this question because it has not had an opportunity to address either Godinez or Edwards.
2. As far as decisions rendered by other divisions of this court are concerned:
• Woods, which involved a defendant who waived counsel and represented himself at trial, was decided about twelve years before Edwards was announced. And, as Edwards indicates, the holding in Woods that Godinez governs the competency of a defendant with mental "infirmities" who wishes to waive his right to counsel was legally appropriate.
• Mondragon and Venzor cited Godinez generally, and did not involve the situation we face here.
• Wilson was a postconviction case that dealt with a mentally ill defendant who had been allowed to waive his right to counsel and represent himself. Thus, Wilson is distinguishable on its facts. Further, we agree with Wilson that the use of Edwards 's additional standard is not constitutionally required. However, unlike the division in Wilson, we conclude that the use of that standard is appropriate in this case.
3. Edwards states that the Dusky standard "assume[s] representation by counsel and emphasize[s] the importance of counsel." Edwards, 554 U.S. at 174, 128 S.Ct. 2379.
4. As Edwards recognized, the complexity of mental illness militates in favor of an additional standard because some defendants may be competent to assist their lawyers, but not competent to represent themselves.
5. Godinez addressed a different question than the one we analyze in this case. There, the issue was whether an additional standard should be used to measure the competency of a defendant who wished to waive his right to counsel and enter a guilty plea. Here, as in Edwards, the issue is whether an additional standard should be applied to evaluate defendant's ability to represent himself at trial.
6. Godinez does not bar the use of such an additional standard.
7. The three analytical pillars supporting the Edwards holding persuade us that the additional standard enunciated in Edwards should be applied on remand.
8. Once a court has determined, under the Dusky standard, that mentally ill defendants who wish to represent themselves are competent, Godinez and Edwards do not hold that the court must automatically grant or deny their requests. Here, depending on the record, the court may (1) find that defendant should have been allowed to represent himself after ensuring that he knowingly, voluntarily, and intelligently waived his right to counsel, see Godinez, 509 U.S. at 401 n. 12, 113 S.Ct. 2680 ; People v. Arguello, 772 P.2d 87 (Colo.1989) ; or (2) find that it was proper to require defendant to be represented by counsel at trial because he was incompetent to represent himself under the additional Edwards standard. See State v. Lane, 365 N.C. 7, 707 S.E.2d 210, 219 (2011).
9. We are persuaded by the decisions of courts in other states, such as Connecticut, *386 Florida, Kentucky, Missouri, and Nebraska, that agree with this approach, although we understand that two of them relied upon a supreme court's supervisory power or its rulemaking authority. To provide one example, our research and analysis lead us to agree with the statement of the Connecticut Supreme Court that, under circumstances like those we face here, trial court findings under Godinez that mentally ill defendants are competent to stand trial and to waive their right to counsel do not end the inquiry. Courts must "make another determination, that is, whether [defendants also are] competent to conduct the trial proceedings without counsel." Connor, 973 A.2d at 650-51.
10. We hew to the standard enunciated in Edwards because there are significant risks inherent in crafting a different one. See id. at 650 n. 22 ("We note that the permissive nature of Edwards apparently creates an anomalous situation in which state courts can determine the level of competency necessary for the exercise of federal constitutional rights such that an individual's right to self-representation under the federal constitution may vary from state to state.").
11. The application of the additional Edwards standard recognizes the critical importance of the trial court's firsthand observations. Edwards, 554 U.S. at 177, 128 S.Ct. 2379. Thus, because the trial court will be required to make credibility determinations and rely on its observations in the course of applying this standard, its decisions will be reviewed for an abuse of discretion. See People v. Price, 240 P.3d 557, 561 (Colo.App.2010) ("We review a trial court's competency determination for an abuse of discretion.").
12. Commentators have declared that, by allowing courts to deny certain competent but mentally ill defendants the right to represent themselves at trial in some circumstances, Edwards has "paved the way" to "improvements in fairness for the mentally ill criminal defendant." Jason R. Marks, State Competence Standards for Self-Representation in a Criminal Trial: Opportunity and Danger for State Courts after Indiana v. Edwards, 44 U.S.F. L. Rev. 825, 835 (2010) ; see Alan R. Felthous & Laura E. Flynn, From Competence to Waive Counsel to Competence to Represent Oneself: the Supreme Court Advances Fairness in Edwards, 33 Mental & Physical L. Rep. 14, 16 (2009).
¶ 56 We now turn to applying our legal holding to the facts of this case.
7. Conclusion
¶ 57 We understand that the trial court did not have the benefit of Edwards when it made its findings. Although some of the court's findings suggest prescience about Edwards 's holding, the court applied Dusky and Godinez. We conclude that the trial court erred in its application of that standard.
¶ 58 The court found that defendant was competent to proceed under the Dusky standard but, because of "mental problems," he was not able to validly waive the right to counsel. Specifically, the court denied defendant's request to represent himself because his mental condition rendered him incapable of making a voluntary, knowing, and intelligent waiver of the right to counsel.
¶ 59 By making this finding, the court erroneously mixed the essential element from the first factor for assessing the validity of a waiver of a right to counsel-defendant's mental capacity, or whether he has the ability to understand the proceedings-into the second element-defendant's mental state, or whether he did, in fact, understand the importance and consequences of his decision. See Godinez, 509 U.S. at 401 n. 12, 113 S.Ct. 2680 ; Venzor, 121 P.3d at 262. This mixture was error because it "counted" defendant's mental capacity twice by considering it in both parts of the assessment, rather than in only the first part. This resulted in his mental capacity controlling the decision in the second part. Because defendant's mental capacity should not have been considered in the second part of the assessment, the trial court used an improper legal standard.
*387 ¶ 60 However, this error does not mean that defendant's conviction after the jury trial must automatically be reversed. Rather, we conclude that the case must be remanded for the court to apply the additional Edwards standard, which we have identified above as the proper standard to be applied in this case. See State v. Jason, 779 N.W.2d 66, 74 (Iowa Ct.App.2009) ("In reaching [the conclusion that Edwards applies a different standard], other courts have remanded the proceedings to the trial court to conduct a hearing to determine the defendant's competency to represent himself or herself post-trial.").
¶ 61 We remand to the trial court judge who previously presided over this case to analyze the existing pretrial record in case number 06CR10189 and to enter findings under the additional Edwards standard that we have concluded applies. We do so because that judge, having observed defendant's conduct and demeanor, is in the best position to make those findings.
¶ 62 If the court, taking into consideration whether defendant was unable to carry out the basic tasks needed to present his defense in counsel's absence, finds that defendant was so mentally ill that he was incompetent to conduct his trial without the assistance of counsel, then the court shall leave the judgment of conviction undisturbed. If the court finds that defendant was competent to conduct his trial under this standard, the court shall vacate the judgment of conviction and proceed accordingly.
¶ 63 B. Pro Se Motions to Dismiss Defense Counsel
¶ 64 Defendant next argues that the trial court erred by not adequately inquiring into his claims that substitute trial counsel was ineffective and labored under a conflict of interest. We disagree.
¶ 65 When a defendant objects to court-appointed counsel, the trial court must inquire into the reasons for the dissatisfaction. If the defendant establishes good cause, such as a conflict of interest, a complete breakdown in communication, or an irreconcilable conflict that may lead to an apparently unjust verdict, the court must appoint substitute counsel.
¶ 66 People v. Kelling, 151 P.3d 650, 653 (Colo.App.2006). However,
¶ 67 [a] court's failure to inquire does not require reversal when a defendant has otherwise placed in the record his or her reasons for dissatisfaction with counsel, those reasons would not qualify as good cause for substituting counsel, and the defendant has not identified any other reason for dissatisfaction that would have been elicited through a formal inquiry.
¶ 68 Id. at 654 ; see also People v. Jenkins, 83 P.3d 1122, 1126 (Colo.App.2003).
¶ 69 Here, defendant concedes that the trial court inquired into the reasons for his dissatisfaction, but argues that the inquiry was inadequate because the trial court relied too heavily on the representations of substitute trial counsel that she could provide effective, conflict-free assistance. Specifically, she told the court that she had met with defendant several times at jail and in court; she had provided him copies of discovery; she had recently represented him on another case that was dismissed; she had not filed suppression motions because the case did not involve any statements or searches; she had chosen not to adopt defendant's other pro se motions, and at least one of them lacked a factual basis; and she was "more than prepared to defend [defendant] to [her] utmost."
¶ 70 After trial, defendant sent a letter of complaint about her to the attorney regulation counsel's office. Before sentencing, the court asked her whether she felt there was any ethical reason why she could not represent defendant at the sentencing hearing. She answered that she would prefer to wait until the complaint had been resolved in order to avoid the appearance of impropriety. But she believed there was no basis for the complaint, she was confident that it would be resolved within a couple of weeks, and she did not believe that her continued representation of defendant was tainted by any ethical problems.
¶ 71 Defendant stated that he wrote to the attorney regulation office for the same reasons he had previously alleged substitute trial *388 counsel was ineffective. Substitute trial counsel offered to "resolve this issue by making [a] request ... that alternative counsel be appointed just to avoid any sort of issues." The trial court denied this request, and proceeded with the sentencing hearing.
¶ 72 With regard to defendant's claim on appeal that the court did not adequately inquire about how substitute trial counsel was representing him ineffectively, the record supports the trial court's finding that defendant's dissatisfaction pertained only to matters of trial preparation, strategy, and tactics. The court based this conclusion on the contents of defendant's pro se motion and his statements to the court, which all related to substitute trial counsel's alleged failure to spend adequate time with him, to interview certain witnesses, and to file certain motions. Thus, we conclude that the trial court's inquiry about this issue was adequate.
¶ 73 The trial court also inquired adequately into the potential conflict of interest caused by defendant's ethical complaint. Defendant stated on the record that the complaint was based on the same issues raised in his motions to dismiss counsel, and substitute trial counsel stated unequivocally that she felt no ethical conflict in continuing to represent defendant. Moreover, the filing of an ethical complaint that counsel believes to be meritless does not create a conflict of interest. See United States v. Holman, 314 F.3d 837, 845-46 (7th Cir.2002) (fact that defendant filed disciplinary inquiry against his attorney is "not enough to establish an actual conflict of interest"); United States v. Burns, 990 F.2d 1426, 1437-38 (4th Cir.1993) (grievance filed against defendant's attorney three days before trial did not create a conflict of interest); Mathis v. Hood, 937 F.2d 790, 796 (2d Cir.1991) (frivolous complaint against attorney does not create conflict of interest); cf. United States v. Patterson, 576 F.3d 431, 436-37 (7th Cir.2009) (district court properly exercised discretion to reject defendant's pro se motion to withdraw guilty plea without a hearing because he was represented by counsel); Perry v. State, 464 S.W.2d 660, 664 (Tex.Crim.App.1971) (filing of civil case against counsel did not create a conflict of interest).
¶ 74 We conclude that the trial court properly followed Kelling and made appropriate inquiry into the reasons why defendant wished to discharge substitute trial counsel. The record supports the trial court's determination that defendant did not establish good cause to discharge substitute trial counsel, and its decision to deny defendant's request to represent himself at the sentencing hearing.
C. Double Jeopardy
¶ 75 Defendant contends that the jury convictions for both possession and distribution of a controlled substance violate constitutional protections against double jeopardy, and that the conviction for possession of a controlled substance must therefore be vacated. We disagree.
¶ 76 Defendant did not preserve this issue for review. Substitute trial counsel stated at sentencing that she "would urge the Court to merge" the two counts, but made no further argument and did not specifically raise the issue of double jeopardy.
¶ 77 We therefore review only for plain error. See People v. Cruthers, 124 P.3d 887, 890 (Colo.App.2005). We will assume, for the purposes of resolving this appeal, that we can address this unpreserved sentencing error. See People v. Tillery, 231 P.3d 36, 52-58 (Colo.App.2009) (Bernard, J., specially concurring) (questioning whether unpreserved sentencing errors are subject to plain error review), aff'd, 266 P.3d 1099 (Colo.2011).
¶ 78 Plain error is obvious and substantial error that "so undermined the fundamental fairness of the proceeding as to cast serious doubt on the reliability of the judgment." People v. Sepulveda, 65 P.3d 1002, 1006 (Colo.2003) ; see also People v. Miller, 113 P.3d 743, 750 (Colo.2005).
¶ 79 The Double Jeopardy Clauses of both the United States and Colorado Constitutions bar multiple punishments for the same offense. Patton v. People, 35 P.3d 124, 128-29 (Colo.2001). Without offending double jeopardy principles, however, the legislature may define multiple offenses-and authorize multiple punishments-based on the same criminal conduct.
*389 People v. Leske, 957 P.2d 1030, 1035 (Colo.1998). Still, a defendant may not be punished multiple times for the same conduct if "[o]ne offense is included in the other." § 18-1-408(1)(a), C.R.S.2011.
¶ 80 In People v. Abiodun, 111 P.3d 462, 471 (Colo.2005), our supreme court held that possession of a controlled substance under section 18-18-405, C.R.S.2011, is a lesser included offense of distribution under the same section where
the only evidence supporting separate charges of possession and distribution ... consisted of testimony that the defendant was either dispatched and a short time later returned to the prearranged scene of a sale with the discrete quantum of drugs he was convicted of distributing, or that he simply arrived at the prearranged scene of a sale with the drugs he was convicted of attempting to distribute.
¶ 81 Thus, a defendant cannot be convicted of both possession and distribution of the exact same quantum of drugs.
¶ 82 Here, the undercover police officer who purchased drugs from defendant testified:
I asked [defendant] for a 40. He then removed suspected crack cocaine from a baggie and then handed me an amount of crack cocaine.
¶ 83 The jury could reasonably have inferred from this testimony that defendant handed the officer only some of the drugs that were in the baggie and kept the rest in his possession. Although the prosecutor relied on the same quantum of cocaine for both counts in closing argument, the jury was free to disregard this theory. Cf. People v. Muckle, 107 P.3d 380, 383 (Colo.2005) (mere possibility that jury relied on identical evidence to convict defendant of separate offenses did not mandate concurrent sentencing).
¶ 84 Because the evidence was sufficient to support a finding that the possession and distribution charges were each based on a different quantum of drugs, we conclude that defendant's conviction on both counts does not violate double jeopardy principles.
III. Guilty Pleas (Cases 05CR1486 and 05CR3846)
¶ 85 Before sentencing in the second and third cases, defendant moved to withdraw his guilty pleas. The trial court declined to address this request because it was not adopted by substitute trial counsel. Defendant argues that this was error because the decision to withdraw a guilty plea implicates an inherently personal right that must be exercised directly by an accused. We agree.
¶ 86 Defendants do not have a right to demand "hybrid" or mixed representation by both themselves and their counsel. Rather, a trial court has discretion to refuse such a request. Arguello, 772 P.2d at 92. A trial court may properly ignore a pro se motion by a represented defendant where the issue raised involves a matter committed to the discretion of defense counsel. See, e.g., People v. Gess, 250 P.3d 734, 737 (Colo.App.2010). We will not disturb a trial court's exercise of discretion unless its decision is manifestly arbitrary, unreasonable, or unfair. People v. Allen, 310 P.3d 83, 85 (Colo.App.2010) (cert. granted 2011 WL 2814341 (July 18, 2011) ).
¶ 87 Defense counsel has broad authority to determine what strategy to employ in the defense of a case. Arko v. People, 183 P.3d 555, 558 (Colo.2008). However, a few decisions involve a fundamental constitutional right that is reserved to a defendant personally. Jones v. Barnes, 463 U.S. 745, 751, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983) ; People v. Bergerud, 223 P.3d 686, 693-94 (Colo.2010). This case involves one of those decisions.
¶ 88 The decision to enter a guilty plea is among the few "fundamental choices that must be decided by the defendant alone." Bergerud, 223 P.3d at 699 ; see also id. at 693 (citing Barnes, 463 U.S. at 751, 103 S.Ct. 3308 ) (other such decisions are whether to testify, waive jury trial, or take an appeal). The established legal process for entering guilty pleas ensures that they are products of defendants' choices.
¶ 89 For example, ethical and procedural safeguards protect defendants from being forced to plead guilty against their will.
*390 Colo. RPC 1.2(a) provides that a lawyer in a criminal case "shall abide by a client's decision, after consultation with the lawyer, as to a plea to be entered."
¶ 90 Further, Crim. P. 11 forbids a trial court from accepting a guilty plea without first determining that the defendant has been advised of certain rights and understands, among other matters, (1) the nature of the charge and the effect of the plea; (2) the right to a jury trial and that he or she waives that right by pleading guilty; (3) the possible penalty; and (4) that the court will not be bound by any representations made by anyone concerning the penalty to be imposed unless it approves a formal plea agreement. The trial court must also determine that there is a factual basis for the plea and it is made knowingly, intelligently, and voluntarily.
¶ 91 Moreover, the purpose of the extensive advisements prescribed by Crim. P. 11 is "to facilitate an accurate determination of adequate compliance with the constitutional requirements necessary for a valid guilty plea." People v. Chippewa, 713 P.2d 1311, 1313 (Colo.App.1985), aff'd, 751 P.2d 607 (Colo.1988). These safeguards exist because a "plea of guilty is more than a confession which admits that the accused did various acts; it is itself a conviction; nothing remains but to give judgment and determine punishment." Boykin v. Alabama, 395 U.S. 238, 242, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).
¶ 92 Although our research has not turned up any Colorado cases that directly address the issue we face here, cases from other jurisdictions have done so, concluding that defense counsel must honor a defendant's request to move to withdraw a guilty plea. In People v. Brown, 179 Cal.App.3d 207, 224 Cal.Rptr. 476, 479-80 (1986), the court held:
We view the decision to seek withdrawal of a plea of guilty, just as the decision to enter such a plea, as one which the defendant is entitled to make. The defendant's attorney may, and when appropriate, should advise against the decision, but the defendant should have the final word on whether to seek withdrawal.
(Citations omitted.)
¶ 93 In State v. Barlow, 419 N.J.Super. 527, 17 A.3d 843, 848 (N.J.Super.Ct.App.Div.2011), the court concluded: "We find implicit in [New Jersey's equivalent of Colo. RPC 1.2(a) ] the requirement that counsel abide by a client's determination, after a plea of guilty has been entered, to seek its withdrawal."
¶ 94 In Joseph v. United States, 878 A.2d 1204, 1211 (D.C.2005), the court stated: "[A]lthough the ultimate decision whether to withdraw one's guilty plea and go to trial lies with the defendant, such a decision should always be guided by advice from competent counsel." (Citation omitted.)
¶ 95 Because our supreme court has made clear that defendants' decisions to plead guilty are reserved to defendants alone, see Bergerud, 223 P.3d at 693-94, 699, we find the reasoning of these out-of-state cases to be persuasive. Thus, applying that reasoning here, we conclude that the decision to ask a court to withdraw a guilty plea is the defendant's. Defense counsel is obligated to advise the defendant about the consequences of such a decision, but the defendant should "have the final word on whether to seek withdrawal." See Brown, 224 Cal.Rptr. at 479-80.
¶ 96 We recognize that, in Hendricks v. People, 10 P.3d 1231, 1236 (Colo.2000), the supreme court held that defense counsel, when permitted by the court, may raise the defense of not guilty by reason of insanity over the defendant's objection. Hendricks does not affect our decision because it involved a "unique" statutory framework; it recognized that defendants have a constitutional interest in selecting their defenses; and it only allowed the court to override the defendant's objection when there is a "critical concern ... that the defendant's rationale [may be] impeded by a potentially decision-affecting mental condition." Id. at 1235-36, 1243-44 & n. 14.
¶ 97 We reach our decision with a clear understanding that, having admitted guilt following the meticulous precautions associated with entering guilty pleas, defendants who have entered guilty pleas do not have an absolute right to withdraw them.
*391 People v. Riley, 187 Colo. 262, 265, 529 P.2d 1312, 1313 (1975). Although Crim. P. 32(d) authorizes a motion to withdraw a guilty plea before sentence is imposed, the decision to grant or deny such a request is left to the sound discretion of the trial court. Id.; see also Chippewa, 751 P.2d at 612. "To warrant a change of plea before entry of a sentence, there must be some showing that denial of the request will subvert justice." People v. Weed, 830 P.2d 1095, 1098 (Colo.App.1991). The defendant has the burden to demonstrate a "fair and just reason" for the change. Id. (citing People v. Gutierrez, 622 P.2d 547, 559 (Colo.1981) ); see also Maes v. People, 155 Colo. 570, 575, 396 P.2d 457, 459 (1964) (circumstances justifying withdrawal of guilty plea may exist where "plea was entered through fear, fraud, or official misrepresentation; or where it was made involuntarily"); accord Brady v. United States, 397 U.S. 742, 757, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970) (defendant may not withdraw plea merely because he or she discovers the prosecution's case is weaker than it once appeared).
¶ 98 Further, assuming that defendant can overcome these hurdles, he faces significant risks if the court allows him to withdraw his guilty pleas. For example, the prosecutor stated that, if defendant were allowed to withdraw his guilty pleas, the prosecution would reinstate the habitual criminal charges that had been dismissed as part of the plea agreement.
¶ 99 Because it should have been defendant's, not substitute trial counsel's, decision to move to withdraw his two guilty pleas before sentencing, the trial court should have inquired of defendant, after defendant consulted with counsel, whether he still wished to do so. The court abused its discretion when it declined to consider defendant's request because the decision to withdraw the guilty pleas was not a matter committed to substitute trial counsel's discretion. See Gess, 250 P.3d at 737.
¶ 100 Last, we observe that the question may arise on remand whether defendant is competent to withdraw or reaffirm his guilty pleas. As indicated above, the Dusky standard controls the resolution of this issue. See Godinez, 509 U.S. at 399, 113 S.Ct. 2680.
¶ 101 Therefore, we remand cases 05CR1486 and 05CR3846 to the trial court. The court shall hold a hearing to determine whether defendant, after consulting with his attorney, still wishes to move to withdraw his guilty pleas. If not, the court shall leave the judgments and sentences in those cases intact. If so, the court should resolve defendant's motion to withdraw the pleas and then proceed accordingly based on its findings.
¶ 102 The case is remanded for further proceedings as directed in this opinion.
Judge HAWTHORNE concurs.
Judge RUSSEL concurs in part and dissents in part.